UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  1/29/2025
```

NOREEN BOFFA, as Parent and Natural
Guardian of A.M. and NOREEN BOFFA,
Individually,

                                  Plaintiff,

                -against-                                              23 Civ. 7596 (AT)

DAVID C. BANKS, in his Official Capacity as                   **OPINION AND ORDER**
Chancellor of the New York City Department of
Education and the NEW YORK CITY
DEPARTMENT OF EDUCATION,

                                  Defendants.

ANALISA TORRES, District Judge:

Plaintiff, Noreen Boffa, individually and on behalf of her daughter A.M., brings this

action against Defendants, David C. Banks, in his official capacity as former Chancellor of the

New York City Department of Education ("DOE"), and DOE, alleging violations of the

Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq. See generally*

Compl., ECF No. 1.  Before the Court are the parties' cross-motions for summary judgment.

ECF Nos. 36, 45.  For the reasons stated below, Plaintiff's motion is GRANTED and

Defendants' motion is DENIED.

**BACKGROUND[1]**

I.     Factual Background

Boffa and A.M. live in New York City.  Pl. 56.1 ¶¶ 1, 3, ECF No. 48.  A.M. suffers from a

range of physical and mental impairments, including cerebral palsy, quadriparesis, microcephaly,

---

[1] The facts are taken from the underlying administrative record and the parties' Rule 56.1 statements, responses, and
declarations, unless otherwise noted.  Disputed facts are so noted.  Citations to a paragraph in a Rule 56.1 statement
include the opposing party's response.  "[W]here there are no citations[,] or where the cited materials do not support
the factual assertions in the [s]tatements, the Court is free to disregard the assertion."  *Holtz v. Rockefeller & Co.*,
258 F.3d 62, 73 (2d Cir. 2001) (alteration and citation omitted).

and global developmental delay.  *Id.* ¶ 2.  As a result of her disabilities, A.M. is entitled to receive special education services and an individualized education program ("IEP") from DOE, her local educational agency.  *Id.* ¶¶ 4–5; *see also* 20 U.S.C. § 1414(d)(2)(A).

From school years ("SYs") 2009–10 through 2019–20, A.M. attended the Hungerford School ("Hungerford"), a specialized public school in New York City, and received a variety of targeted services, including special transportation to and from Hungerford.  Pl. 56.1 ¶ 6; Admin. Record ("AR") at 16, 51–53, ECF No. 35.  On January 16, 2020, the DOE Committee on Special Education (the "CSE") convened to develop an IEP for A.M. for SY 2020–21 (the "2020 IEP").  *Id.* at 53.  The 2020 IEP recommended, *inter alia*, that A.M. continue her placement at Hungerford.  *Id.*  In June 2020, after schools had closed because of the COVID-19 pandemic, Boffa, dissatisfied with the recommendations in the 2020 IEP, enrolled A.M. at the International Institute for the Brain ("iBrain"), a private school, for SY 2020–21.  *See id.* at 17.  Boffa subsequently notified DOE of her intention to unilaterally place A.M. at iBrain and seek tuition reimbursement.  *Id.* at 53.  DOE informed Boffa that it would not voluntarily pay iBrain's tuition and advised her to file a due process complaint if she remained interested in pursuing a unilateral placement at DOE's expense.  *Id.* at 54.  In July 2020, Boffa brought a due process complaint against DOE, alleging that it failed to provide A.M. with a free appropriate public education ("FAPE") for SYs 2009–10 through 2020–21.  Pl. 56.1 ¶ 11; AR at 17, 171.  That autumn, iBrain assessed A.M. and found that she possessed indications of cortical visual impairment ("CVI"), a neurological processing disorder that impacts one's vision.  AR at 221.

In April 2021, the CSE convened and developed a new IEP for A.M. (the "2021 IEP").  *Id.* at 54.  The 2021 IEP again recommended placement at Hungerford, this time with more specialized instruction, and the provision of targeted services.  *Id.* at 54–55.  As before, Boffa

disagreed with the recommendations in the 2021 IEP, and in a June 23, 2021 letter, she informed DOE of her intent to unilaterally keep A.M. at iBrain for SY 2021–22. *Id.* at 55. DOE again told Boffa that she would need to file a due process complaint to seek tuition reimbursement, so on July 8, 2021, Boffa filed another due process complaint, alleging denial of a FAPE for SY 2021–22. *Id.* at 18, 56, 298; Pl. 56.1 ¶ 15. The two complaints were consolidated before the same impartial hearing officer (the "IHO"). AR at 19.

In November 2021, A.M. visited the NYU Langone Eye Center, where she received several vision-related diagnoses. Pl. 56.1 ¶ 9; AR at 56. The doctor who evaluated A.M. recommended that she be considered blind and receive full vision services. Pl. 56.1 ¶ 9; AR at 56. Three months later, in February 2022, DOE conducted its own assessment of A.M.'s vision and recommended that she receive full vision services by a trained vision instructor twice a week, for 30 minutes per session. Pl. 56.1 ¶ 10; AR at 56, 541. In March of that year, a neuropsychologist conducted an extensive neuropsychological independent educational evaluation ("IEE") of A.M. AR at 57, 1018. The neuropsychologist reported that, during A.M.'s years in public school, she demonstrated "[l]ittle evidence of measured progress" but that, since attending iBrain, A.M. had made significant and measurable improvements across a variety of skills. *Id.* at 57–58, 1025–26. The neuropsychologist hypothesized that A.M. could have made progress sooner had she received such high-intensity services at a younger age. *Id.* at 57–58, 1025–26.

Later that month, the CSE met and developed an IEP for SY 2022–23 (the "2022 IEP"). *Id.* at 58. Although the 2022 IEP recommended the provision of vision services twice a week, it still recommended placing A.M. at a DOE public school, did not recommend limited travel time and air conditioning as a part of A.M.'s transportation, and did not recommend the provision of

music therapy, decisions that Boffa and iBrain found concerning.  *Id.*  So, on July 6, 2022, Boffa filed a third due process complaint, alleging denial of a FAPE for SY 2022–23.  Pl. 56.1 ¶ 28; ECF No. 37-1.  In addition to asserting the denial of a FAPE for SY 2022–23, Boffa requested a ruling that iBrain constitutes A.M.'s pendency placement, in other words, the school at which A.M. is entitled to remain until the present claims are resolved.  Pl. 56.1 ¶¶ 29–30; ECF No. 37-1; *see* 20 U.S.C. § 1415(j).  This complaint and the pendency issue remain unresolved.

II.    The IHO's Decision

After overseeing a six-day due process hearing, the IHO issued her findings of fact and decision (the "FOFD") on May 4, 2023.  Pl. 56.1 ¶ 17; AR at 48.  First, according to the IHO, Boffa's claims concerning SYs 2009–10 through 2017–18 are barred by the IDEA's two-year statute of limitations.  AR at 66–68.  Second, DOE failed to consider sufficient evaluative data during the CSE meetings for SYs 2009–10 through 2021–22, resulting in the denial of a FAPE for those years.  *Id.* at 72–73.  Third, DOE's failure to identify or address A.M.'s vision-related deficits during SYs 2009–10 through 2021–22 resulted in the denial of a FAPE and constituted a gross violation of the IDEA.  *Id.* at 73–74.  Fourth, DOE's failure to provide A.M. with sufficient related services and supports during SYs 2012–13 through 2020–21 denied A.M. a FAPE.  *Id.* at 75–76.  Fifth, DOE's failure to recommend music therapy services for A.M. during SYs 2018–19 through 2020–21 resulted in the denial of a FAPE.  *Id.* at 76–77.  Sixth, DOE's failure to provide Boffa an opportunity to meaningfully participate in the IEP-development process during SYs 2018–19 through 2020–21 resulted in the denial of a FAPE.  *Id.* at 77–78.  Seventh, DOE's failure to recommend an appropriate placement for A.M. during SYs 2018–19 through 2020–21 resulted in the denial of a FAPE.  *Id.* at 78–80.  Lastly, DOE's failure to recommend the

4

provision of a transportation paraprofessional for A.M. during SY 2020–21 resulted in the denial of a FAPE. *Id.* at 81–83.

The IHO then addressed the issue of relief. She determined that Boffa's unilateral placement of A.M. at iBrain for SYs 2020–21 and 2021–22 was appropriate and that equitable considerations counseled in favor of tuition and transportation reimbursement for those years. *Id.* at 84–92. She also determined that, although A.M. is entitled to compensatory education to remedy DOE's failure to provide her a FAPE, traditional compensatory education "would prove burdensome, duplicative[,] and unwarranted" at this point. *Id.* at 95–96. However, because DOE's "failure to timely and appropriately evaluate [A.M.], failure to identify [A.M.]'s vision education needs, and failure to recommend or provide appropriate educational programs and placement for [A.M.] amounted to gross violations of the IDEA," A.M. is entitled to extended eligibility of special education services until age 25. *Id.* at 96–99. During those years, stated the IHO, DOE must provide tuition and supplemental tuition for iBrain or "another equally-credentialed school of [Boffa]'s choosing if continued enrollment at [iBrain] becomes unavailable," plus special transportation. *Id.* at 98.

III.    The SRO's Decision

DOE appealed to the New York State Education Department's Office of State Review. *Id.* at 145. DOE did not challenge the IHO's award of tuition reimbursement for the two years A.M. spent at iBrain, but did appeal the portions of the FOFD finding that A.M. was denied a FAPE from SYs 2009–10 through 2017–18 and that her eligibility for services should therefore be extended through age 25. *Id.* at 41, 147–54.

The assigned state review officer (the "SRO") issued her decision on July 26, 2023. *Id.* at 15. She determined, first, that any finding the IHO made regarding the denial of a FAPE during

the period barred by the statute of limitations was "improper" and therefore reversed. *Id.* at 24. She next held that, although the CSE considered sufficient evaluative data regarding many of A.M.'s special needs,[2] DOE "knew, or should [have] known, of [A.M.]'s visual impairments as far back as 2016," yet it "failed to recommend [vision education services] or that [A.M.]'s vision be evaluated during the timeframe at issue." *Id.* at 25–31. Accordingly, the SRO affirmed the IHO's determination that DOE denied A.M. a FAPE during SYs 2018–19 through 2021–22 by failing to properly evaluate her vision or recommend vision education services. *Id.* at 32. However, the SRO concluded that there was not sufficient evidence to uphold the IHO's findings that DOE's failure to provide A.M. with music therapy or a transportation paraprofessional resulted in the denial of a FAPE. *Id.* at 36–39. The SRO also determined that the IHO erred in considering Boffa's challenge to the ability of the assigned SY 2021–22 school placement to implement the 2021 IEP, which the SRO deemed "speculative." *Id.* at 39–41.

Given these conclusions, the SRO upheld the portion of the FOFD requiring DOE to pay for A.M.'s iBrain tuition and the costs of special transportation for SYs 2020–21 and 2021–22. *Id.* at 41. However, she reversed the IHO's decision to grant A.M. four years of extended eligibility on top of that tuition reimbursement. AR at 43. As the SRO explained, A.M. will not turn 21 until SY 2023–24, leaving her at least two years beyond SY 2021–22 to "achieve the progress guaranteed by the IDEA—that is, the progress which is appropriate in light of the circumstances of her disability." *Id.* at 43. The SRO described how A.M. made "gradual progress" in her assigned public school and had been "steadily progressing" at iBrain. *Id.* at 43– 44. Because "a request for compensatory education should be denied when the deficiencies

---

[2] Because the IHO's determination that DOE's failure to provide Boffa an opportunity to meaningfully participate in the IEP-development process during SYs 2018–19 through 2020–21 was based entirely on her assessment that the CSE did not consider sufficient evaluative data, the SRO did not separately consider Boffa's participation in the IEP-development process. AR at 24 n.6.

suffered have already been mitigated," the SRO stated, extended eligibility was not warranted. *Id.* at 44 (citation omitted). Such extended eligibility would be particularly inappropriate here because the IHO crafted this relief in part based on her finding that A.M. was denied a FAPE during SYs 2009–10 through 2021–22, including during those years that fall outside the IDEA's statute of limitations. *Id.* at 44. The IHO's award was also improper, explained the SRO, because by mandating that A.M. be placed at iBrain during her years of extended eligibility, the IHO effectively "circumvent[ed] the statutory process," pursuant to which a CSE must periodically review a student's progress and recommend appropriate services. *Id.* at 44–45.

IV.    Procedural Background

Boffa commenced this action in August 2023. *See generally* Compl. She asks the Court to: (1) overturn the portion of the SRO's decision that reversed the IHO's award of four years of extended eligibility, (2) declare that iBrain was A.M.'s pendency placement for SY 2022–23 and require DOE to reimburse her for A.M.'s tuition during that period, and (3) award reasonable attorneys' fees.[3] *Id.* ¶¶ 25–28. Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 36, 45; *see also* Pl. Mem., ECF No. 40; Def. Mem., ECF No. 46; Pl. Opp., ECF No. 49; Def. Opp., ECF No. 53.

**LEGAL STANDARD**

Although the parties have ostensibly filed cross-motions for summary judgment, "the procedure is in substance an appeal from an administrative determination, not a summary judgment." *Perez v. Banks*, No. 23 Civ. 2966, 2024 WL 4307934, at *2 (S.D.N.Y. Sept. 26,

---

[3] Boffa previously asked the Court to enforce the unchallenged portion of the IHO's order, which required DOE to reimburse A.M.'s tuition and transportation costs for SYs 2020–21 and 2021–22. Compl. ¶ 24. In her memorandum in support of her motion for summary judgment, dated April 15, 2024, Boffa asserted that she was still awaiting reimbursement. Pl. Mem. at 23–24. In their briefing, Defendants responded that they had already satisfied the reimbursement by check dated January 29, 2024. Def. Mem. at 15. Boffa later confirmed that she did receive payment for the relevant SYs. Pl. Opp. at 12.

2024) (citation omitted); *see also Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005). The Court therefore conducts an independent review of the record and "bas[es] its decision on the preponderance of the evidence," 20 U.S.C. § 1415(i)(2)(C)(iii), "giv[ing] due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy," *A.C. ex rel. M.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009) (cleaned up) (quoting *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 113 (2d Cir. 2007)).

Where, as here, "the SRO's decision conflicts with the earlier decision of the IHO, the IHO's decision 'may be afforded diminished weight.'" *Id.* (quoting *Gagliardo*, 489 F.3d at 113 n.2). Ultimately, the Court must "defer to the final decision of the state authorities, even where the reviewing authority disagrees with the hearing officer." *Id.* (citation omitted). "Deference is particularly appropriate when the state officer's review 'has been thorough and careful.'" *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 184 (2d Cir. 2012) (quoting *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998)).

## DISCUSSION

I.    Extended Eligibility

    A.  Statute of Limitations

The IHO determined that Boffa's claims pertaining to years predating SY 2018–19 are barred by the statute of limitations.[4] *Id.* at 66–68. Boffa contends that the statute of limitations

---

[4] The SRO did not have occasion to conduct its own analysis because Boffa did not appeal the IHO's determination that claims concerning SYs 2009–10 through 2017–18 are barred by the statute of limitations. AR at 24. Usually, an "aggrieved" party's failure to appeal any portion of an IHO's decision leads to forfeiture of the issue. *Phillips v. Banks*, 656 F. Supp. 3d 469, 483 (S.D.N.Y. 2023). However, if a party raised an issue before the IHO but was not "aggrieved" by the IHO's resolution of her claim, and thus had no occasion to press the issue before the SRO, the party may raise the issue before a reviewing court. *Id.*; *see also D.N. ex rel. G.N. v. N.Y.C. Dep't of Educ.*, 905 F. Supp. 2d 582, 587–88 (S.D.N.Y. 2012). Because Boffa received "precisely the relief she sought" before the IHO—

was tolled until November 2021, when she first obtained an eye exam for A.M. and learned that her daughter is legally blind. Pl. Mem. at 10–12; *see* AR at 56. The Court reviews the application of a statute of limitations *de novo*. *See Somoza v. N.Y.C. Dep't of Educ.*, 538 F.3d 106, 112 (2d Cir. 2008); *K.H. v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 1680, 2014 WL 3866430, at *15 (E.D.N.Y. Aug. 6, 2014).

Under the IDEA, a parent may file a due process complaint asserting a violation "that occurred not more than 2 years before the date the parent . . . knew or should have known about the alleged action that forms the basis of the complaint." 20 U.S.C. § 1415(b)(6)(B). Boffa testified that although she has long known that her daughter has limited vision in her left eye, she did not know that A.M. was legally blind until iBrain conducted a vision assessment in September 2020 and Boffa confirmed the diagnosis with an eye doctor in late 2021. AR at 64, 127, 221, 2515–16, 2532. Boffa argues that her claims did not begin to accrue until that period and that the IHO mistakenly conflated her knowledge of A.M.'s generalized special needs with her knowledge of A.M.'s vision problems. Pl. Mem. at 11–12; *see* AR at 68.

The Court agrees. The "knew or should have known" language in the IDEA's statute of limitations reflects the principle that families "should [not] be blamed for not being experts about learning disabilities." *K.C. v. Chappaqua Cent. Sch. Dist.*, No. 16 Civ. 3138, 2018 WL 4757965, at *14 (S.D.N.Y. Sept. 30, 2018) (citation omitted). DOE points to no evidence suggesting that Boffa knew or should have known about the severity of A.M.'s vision problems before she enrolled A.M. at iBrain, nor does Boffa's preexisting knowledge that A.M. suffers from global delays suffice to put Boffa on notice of the specific statutory violations at issue here. *Cf. K.H.*,

---

reimbursement for A.M.'s placement at iBrain and four years of extended eligibility—"she 'had neither the responsibility nor the right' to cross-appeal any portions of the IHO's decision." *D.N.*, 905 F. Supp. 2d at 588 (quoting *Antkowiak ex rel. Antkowiak v. Ambach*, 838 F.2d 635, 641 (2d Cir. 1988)). The Court will, therefore, consider her argument on the merits.

2014 WL 3866430, at *17 (rejecting the argument that parents "should have known to file a due process complaint when they learned how little progress [their child] was making in school" because "they had no reason to know how much progress [the child] was capable of making").

Because Boffa did not have reason to know about A.M.'s blindness until September 2021, Boffa's claims reaching back to SY 2009–10, to the extent they concern DOE's failure to provide A.M. with vision-related services, are not precluded by the IDEA's statute of limitations.

### B. Denial of a FAPE

Having determined that Boffa's claims are not time-barred, the Court now considers whether DOE denied A.M. a FAPE during the relevant years. DOE does not challenge the IHO and SRO's determinations that the 2019, 2020, and 2021 IEPs, each of which failed to identify A.M.'s blindness and recommend vision services, were inappropriate and led to the denial of a FAPE during SYs 2018–19 through 2020–21. *See* AR at 31–32, 71–78. The Court, therefore, need only decide whether A.M. was denied a FAPE from SYs 2009–10 through 2017–18, the years the IHO determined were time-barred. *See* AR at 66.

The IDEA requires states to provide disabled students with a FAPE through age 21. 20 U.S.C. § 1412(a)(1)(A). To effectuate that mandate, school districts must create IEPs for each disabled child within their jurisdiction. *Id.* § 1414(d)(2)(A). These IEPs are "the centerpiece of the IDEA's education delivery system," *W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 927 F.3d 126, 133 (2d Cir. 2019) (quoting *Mr. P v. W. Hartford Bd. of Educ.*, 888 F.3d 735, 741 (2d Cir. 2018)), and every IEP must be "reasonably calculated to enable [a] child to receive educational benefits," *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012) (citation omitted).

The IHO and SRO, as state administrative specialists, are better positioned than the Court to evaluate whether an IEP is substantively adequate under the IDEA, and their determinations

regarding the sufficiency of A.M.'s IEPs merit judicial deference.  *See Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 382 (2d Cir. 2003) (explaining that "the sufficiency of goals and strategies in an IEP is precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers").  Although the SRO did not have occasion to consider the adequacy of the IEPs before SYs 2018–19, the IHO—despite finding that the earlier years were barred by the statute of limitations—ultimately evaluated those IEPs and found that their failure to include vision services, despite indications that A.M. required such services, resulted in the denial of a FAPE.[5]  AR at 73–74.  The Court defers to that administrative determination, which is buttressed by the SRO's finding that DOE's failure to recommend vision services in subsequent years similarly denied A.M. a FAPE during that later period.  *See id.* at 31–32.  Accordingly, DOE's failure to recommend vision services for A.M. resulted in the denial of a FAPE from SYs 2009–10 through 2021–22.

C.  Appropriate Remedy

The Court now turns to the appropriate remedy.  The IHO awarded Boffa full tuition reimbursement for SYs 2020–21 and 2021–22 and, after determining that A.M. was entitled to compensatory education but that traditional compensatory education would prove "burdensome" and "duplicative," granted A.M. extended eligibility for special education services through age 25.  AR at 91, 96–99.  The SRO affirmed the award of tuition reimbursement but found that the circumstances did not warrant four years of extended eligibility.  AR at 41–45.  Boffa appeals that latter determination.  Pl. Mem. at 6.

---

[5] The Court agrees with the SRO that, once the IHO determined that the statute of limitations barred Boffa's claims before SY 2018–19, it was legally improper for the IHO to consider any potential denial of a FAPE during the earlier nine-year period.  *See* AR at 24.

If a parent believes that DOE has failed to provide a FAPE to her child, she "may enroll the child in a private school at [her] own financial risk and seek retroactive reimbursement from the school district for the cost of the private school." *W.A.*, 927 F.3d at 133.  She may additionally seek compensatory education, a variety of "prospective equitable relief[] requiring a school district to fund education beyond the expiration of a child's eligibility as a remedy for any earlier deprivations in the child's education." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 456 (2d Cir. 2015) (quoting *Somoza*, 538 F.3d at 109 n.2).  Generally, an award of compensatory education is appropriate "only for gross violations of the IDEA" and "must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Somoza*, 538 F.3d at 109 n.2; *E. Lyme Bd. of Educ.*, 790 F.3d at 457 (citation omitted).

The record establishes that, despite issuing multiple IEPs that described A.M. as a "visual learner" who required "vision services," AR at 31–32, 734 (2015 IEP), 773 (2016 IEP), 1647 (2017 IEP), DOE failed to take any measures to evaluate A.M.'s pronounced CVI symptoms or recommend vision services until February 2022, *thirteen years* after A.M. started at Hungerford. *See id.* at 32, 74, 541.  Although the Second Circuit has not defined what constitutes a gross violation of the IDEA, *Doe ex rel. Doe v. E. Lyme Bd. of Educ.*, No. 11 Civ. 291, 2020 WL 7078727, at *19 (D. Conn. Dec. 3, 2020), the Court determines that the denial of a crucial resource like vision education services for most of a child's education qualifies as a gross violation of the statute.  This conclusion is bolstered by the IHO's finding of a gross violation[6] and the opinion of A.M.'s evaluating neuropsychologist, who wrote that A.M. showed "little

---

[6] As explained above, the SRO did not evaluate DOE's actions during SYs 2009–10 through 2017–18, so the Court does not give substantial deference to its conclusion that the IHO erred in finding that DOE perpetrated a gross violation of the IDEA.  *See* AR at 43–44, 96.

evidence of measurable progress" during her years at Hungerford and "hypothesized with a reasonable degree of clinical certainty that [A.M.] could have made improvements sooner across [a wide range of capabilities] had she received the same intensity of treatments and services [at Hungerford] as she receives at iBrain, beginning at a much younger stage."  AR at 1020, 1026. The Court's decision is also supported by the testimony of A.M.'s iBrain physical therapist, who testified that, had A.M. received the sorts of interventions she receives at iBrain from a younger age, she would "definitely [be] more independent and active in her activities of daily living," "would not be [] chair-bound," and "wouldn't have regressed so much in different activities." AR at 2314.

Defendants observe that the harm caused A.M. has been somewhat mitigated by her attendance at iBrain, reducing the need for compensatory education.  *See* Def. Mem. at 12; *cf. Perez*, 2024 WL 4307934, at *5 (faulting an IHO for failing to explain why attendance at a private school was not adequate to mitigate the denial of a FAPE).  Be that as it may, the Court finds it hard to believe that three years of attendance at iBrain could come close to making up for a thirteen-year denial of vision services.  The Court, therefore, awards A.M. compensatory education in the form of extended eligibility through age 25.[7]

II.    Pendency During SY 2022–23

The Court next resolves the issue of pendency placement.  Boffa contends that A.M.'s pendency placement for SY 2022–23 was at iBrain because, although A.M.'s 2022 IEP did not recommend placement there, the IHO found—and DOE did not challenge—that A.M.'s placement at iBrain during SYs 2020–21 and 2021–22 was appropriate.  Pl. Mem. 20–23; *see*

---

[7] The Court agrees with the SRO that mandating that A.M. remain at iBrain or an alternative private school for the duration of her extended eligibility would inappropriately circumvent the IDEA's procedural requirements, which charge states with periodically assessing a student's needs and updating her recommended services and placement accordingly.  AR at 44–45; *see* 20 U.S.C. § 1414(a)(2), (c)(1), (d)(4).

*also* AR at 41, 87.  In fact, Boffa argues, had the IHO and SRO issued their opinions within the

time allotted by New York law, A.M.'s pendency placement would unquestionably have been

iBrain.  *See* Pl. Mem. at 20.  DOE insists that pendency does not lie at iBrain for SY 2022–23 or,

in the alterative, that pendency was not effective until July 26, 2023, the date of the SRO's

decision confirming the appropriateness of A.M.'s unilateral placement at iBrain.  Def. Mem. at

13–15.

Once a parent initiates an administrative proceeding by filing a due process complaint, the

IDEA's "pendency" provision mandates that a student remain in her "then-current educational

placement" until all due process proceedings have concluded.  20 U.S.C. § 1415(j); *see T.M. ex

rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 170–71 (2d Cir. 2014).  The term "then-

current educational placement" usually refers to the last agreed-upon educational placement

before the parent filed her complaint.  *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d

519, 532 (2d Cir. 2020).  However, this placement may be changed "if an impartial hearing

officer or state review officer finds the parent['s] new placement to be appropriate by

adjudicating the IEP dispute in the parent['s] favor, and the school district chooses not to appeal

the decision."  *Id.*  Accordingly, once DOE chose not to appeal the finding that Boffa's

placement of A.M. at iBrain was appropriate, iBrain became A.M.'s pendency placement.  The

question is whether Defendants must reimburse Boffa for A.M.'s tuition and related services

during the period before pendency was established.

The Court finds that reimbursement is both authorized and warranted.  In *Mackey ex rel.

Thomas M. v. Board of Education for Arlington Central School District*, the Second Circuit

confronted a factually similar situation.  Parents, who unilaterally placed their child at a private

school and were ultimately awarded tuition reimbursement, rejected an IEP and kept their child

at the private school while the earlier reimbursement action was still pending.  386 F.3d 158, 161 (2d Cir. 2004).  Like this case, the earlier reimbursement action was decided long after the date when the state administrative process should have concluded.  *Id.* at 163–64.  Similarly, the reimbursement action was decided in the parents' favor.  *Id.* at 161.  The court determined that it would be "unfair" to penalize the parents for the state's delay, reasoning that if the state had issued its final order within the required thirty days, the private school would have been the child's placement from that point on, and the parents would, "without question," have been entitled to tuition reimbursement on a pendency basis for at least the remainder of the review process.  *Id.* at 164.  Relying on the IDEA's grant of "equitable authority" to the federal courts, the Second Circuit held that "retroactive" reimbursement based on pendency was appropriate. *Id.* at 165; *see also R.S. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 2257, 2022 WL 902671, at *2 (S.D.N.Y. Mar. 28, 2022) (applying *Mackey* and explaining that "the financial burden of pendent placement should not be borne by parents whose position has been vindicated by the IDEA decision" (cleaned up) (citation omitted)).

In this case, the IHO and SRO found that iBrain was an appropriate placement for A.M. beginning in SY 2020–21, a determination DOE did not appeal.  AR at 31–32, 85–91.  Applying this decision retroactively, A.M.'s then-current educational placement on July 6, 2022, the date Boffa filed her due process complaint for SY 2022–23, was iBrain.  Accordingly, A.M.'s pendency placement was iBrain for the entirety of SY 2022–23, and Boffa is entitled to tuition and transportation reimbursement from that date forward.  *See S.H.W. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 4808, 2023 WL 2753165, at *8 (S.D.N.Y. Mar. 31, 2023).

III.    Attorneys' Fees

Lastly, Boffa requests reasonable attorneys' fees as the prevailing party in this action.  Pl.

Mem. at 24–25.  Pursuant to the IDEA, the Court, "in its discretion, may award reasonable

attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a

disability."  20 U.S.C. § 1415(i)(3)(B)(i)(I).  Such fees "shall be based on rates prevailing in the

community in which the action or proceeding arose for the kind and quality of services

furnished."  *Id.* § 1415(i)(3)(C).  To qualify as a "prevailing party," the party must "attain[]

success on any significant issue in the litigation that achieves some of the benefit sought in

bringing the litigation, and the manner of the resolution of the dispute constitutes a change in the

legal relationship of the parties."  *B.W. ex rel. K.S. v. N.Y.C. Dep't of Educ.*, 716 F. Supp. 2d 336,

344 (S.D.N.Y. 2010) (quoting *Mrs. M. v. Tri-Valley Cent. Sch. Dist.*, 363 F. Supp. 2d 556, 569

(S.D.N.Y. 2002)).  The Court interprets the prevailing party standard "generously."  *Student X*,

2008 WL 4890440, at *27.

Boffa has succeeded on all of her claims and will receive meaningful relief: She has

demonstrated both that A.M. was denied a FAPE during the majority of her years as a student,

entitling A.M. to four years of extended eligibility, and that pendency placement was appropriate

at iBrain during SY 2022–23, entitling Boffa to tuition and transportation reimbursement for the

years this suit remained pending.  Accordingly, Boffa is entitled to reasonable attorneys' fees.

## CONCLUSION

For the foregoing reasons, Boffa's motion for summary judgment is GRANTED and

Defendants' motion for summary judgment is DENIED.  By **February 14, 2025**, the parties

shall file a proposed judgment in accordance with this order.  By **February 28, 2025**, Plaintiff

shall file her application for attorneys' fees.

16

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 36 and 45.

SO ORDERED.

Dated: January 29, 2025
New York, New York

_____
ANALISA TORRES
United States District Judge